IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**DELFON LEBREW HARE,**

    Petitioner,

v.

**UNITED STATES OF AMERICA,**

    Respondent.

Criminal Case No.: RWT-7-189
Civil Action No.: RWT-10-1757

## MEMORANDUM OPINION

Petitioner Delfon Lebrew Hare, currently serving a thirty year sentence for possession with intent to distribute fifty grams or more of cocaine base under 21 U.S.C. § 841, raises a number of statutory and Constitutional claims in his motion to vacate, set aside, or correct his sentence under 28 U.S.C.§ 2255, as amended ("motion to vacate"), that is before this Court. He argues that (1) he was denied his statutory and Constitutional rights to a speedy trial, (2) the government violated the notice procedures under 21 U.S.C. § 851, (3) he made an involuntary guilty plea, and (4) he suffered from ineffective assistance of counsel. For the reasons stated below, each of these claims will be denied.

## BACKGROUND

Delfon Lebrew Hare was arrested on October 11, 2006 by the Prince George's County Police Department. Pet'r's Exs. A, B, ECF Nos. 74-4, 74-5. As the police moved towards him that day, Hare fled, throwing "what appeared to be a brown paper bag down a drainage area." Pet'r's Exs. A, B, ECF Nos. 74-4, 74-5. The bag contained a substance that field tested positive for cocaine, Pet'r's Exs. A, B, ECF Nos. 74-4, 74-5, and Hare was charged with state crimes and held in county custody. Government Resp. at 1, ECF No. 70. On October 12, 2006, a criminal

1

complaint was filed against Hare in this Court, and an arrest warrant was issued, "against which [federal agents] filed a detainer on Petitioner with the Prince George's County Detention Center." Government Resp. at 1, ECF No. 70; ECF Nos. 1-2. Hare was held on state charges in county custody until a federal grand jury indicted him on April 18, 2007, after which he was transferred to federal custody and appeared before this Court on May 21, 2007. Government Resp. at 2, ECF No. 70. A federal grand jury issued a superseding indictment on May 23, 2007, ECF No. 7, and then Assistant Federal Public Defender Matthew Kaiser entered his appearance to represent Hare before this Court on May 25, 2007. ECF No. 8; Government Resp. at 2, ECF No. 70.

Assistant United States Attorney ("AUSA") Deborah Johnston made a plea offer to Hare on August 8, 2007, which Hare signed on August 24, 2007. Guilty Plea; Government Resp. at 2-3, ECF No. 70. The agreement stipulated that Hare would plead guilty to two counts of the superseding indictment and would admit to three separate instances in which he made arrangements or agreed to sell about sixty-two grams of cocaine base. Guilty Plea Ex. A. The stipulated facts also included a clause stating that "[t]he certified records of Prince George's County Circuit Court establish that he has at least one prior conviction for a drug felony offense as defined by Title 21 of the United States Code." Guilty Plea Ex. A. In consideration for this admission, the government "agreed to notify this court of only one of Petitioner's prior convictions for drug trafficking offenses rather than two, making the minimum sentence he faced 20 years imprisonment rather than a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A)[]." Government's Resp. at 2, ECF No. 70. AUSA Johnston fulfilled this commitment and filed a notice of intent to seek enhanced penalties for only one prior felony drug conviction the same day that Hare signed the plea agreement. ECF No. 13; Government's Resp. at 3, ECF No. 70.

2

On August 29, 2007, Hare appeared before this Court and pled guilty. Guilty Plea Tr., Aug. 29, 2007; ECF No. 14. During the hearing, the Court performed an extensive colloquy with Hare regarding his plea and its conditions to verify that it was knowing and voluntary. *See* Guilty Plea Tr. Mr. Kaiser filed a motion to withdraw as counsel on November 13, 2007, and Timothy Sullivan entered his appearance as Hare's new attorney on November 26, 2007. ECF Nos. 17, 21.

Hare moved to withdraw his guilty plea on June 18, 2008. ECF No. 29. On June 27, 2008, this Court heard arguments on his motion before deciding to deny it. Sentencing Tr. at 39-40, ECF No. 39. Hare subsequently lost credit for acceptance of responsibility and incurred a sentencing enhancement for obstruction of justice. Sentencing Tr. at 41, 43-44, ECF No. 39. He was sentenced to a term of imprisonment of thirty years. Sentencing Tr. at 55, ECF No. 39. The U.S. Court of Appeals for the Fourth Circuit affirmed on March 26, 2009. *United States v. Hare*, 319 Fed. Appx. 280, 282 (4th Cir. 2009), ECF No. 42.

## PROCEDURAL BACKGROUND

On July 27, 2010, Hare filed his motion to vacate. Pet'r's Mot. to Vacate, ECF No. 53. On July 30, 2010, Hare filed a motion to amend his original motion to vacate, adding certain ineffective assistance of counsel claims. Pet'r's Mot. to Amend Mot. to Vacate, ECF No. 57-1. This Court granted this motion to amend on August 27, 2010. ECF No. 60. The government responded to Hare's motions on December 6, 2010. Government Resp., ECF No. 70. Hare filed a reply to the government's response on January 31, 2011. Pet'r's Reply, ECF No. 74. Hare later filed another motion to amend his original motion to vacate in early 2013. *See* Pet'r's Mot. to Amend, ECF Nos. 81-83. This Court granted this new motion to amend on August 9, 2013,

ECF No. 84, and the government filed a response on September 6, 2013. Government Resp., ECF No. 87.

**ANALYSIS**

Under 28 U.S.C. § 2255(a), a prisoner in custody may file a motion to vacate, set aside, or correct a sentence, "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Pursuant to 28 U.S.C. § 2255(b), the Court may deny the motion without a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see, e.g.*, *Zelaya v. United States*, No. DKC 05-0393, 2013 WL 4495788, at *2 (D. Md. Aug. 20, 2013).

**I. Hare's Speedy Trial Claims**

Hare contends his rights to a speedy trial under the Speedy Trial Act of 1974 and the Sixth Amendment of the U.S. Constitution were violated. ECF Nos. 53, 53-2. However, these claims fail because the provision of the Speedy Trial Act cited by Hare is inapplicable to his situation and because the period between his arrest and his guilty plea was too short to infringe the Sixth Amendment.

A. <u>Speedy Trial Claims Under 18 U.S.C. § 3161</u>

Hare alleges that he was "arrested and detained on federal charges on 10/11/06," but that he was not indicted in the federal system until about six months later, thus violating 18 U.S.C. § 3161(b), which requires an indictment or information to be filed within thirty days of an arrest. ECF No. 53-2; 18 U.S.C. § 3161(b). This assertion misses the mark because Hare was arrested

on *state* charges on October 11, 2006, not federal charges, thus making this statutory provision inapplicable. *United States v. Williamson*, 85 Fed. Appx. 943, 944-45 (4th Cir. 2004) ("This Circuit has interpreted § 3161(b) to mean that the thirty-day time period does not begin to run until there is a federal arrest.").

Hare argues that his period of state detention following his arrest should count towards the thirty day window to file an indictment or information under § 3161(b), but he fails to show that the state lacked "valid charges . . . pending against [him]" or that the federal government had "knowledge that [he was being] held by state authorities solely to answer to federal charges." *United States v. Woolfolk*, 399 F.3d 590, 595-96 (4th Cir. 2005). State-federal cooperation, which is what Hare alleges, does not start the Speedy Trial Act clock under § 3161(b) at the moment of a state arrest. *Williamson*, 85 Fed. Appx. at 944. Hare points to an affidavit by FBI Agent Jae B. Shim, ECF No. 74-4, and a Statement of Probable Cause filed in state court, ECF No. 74-5, to indicate that the Prince George's County Police Department and the FBI worked together to arrest him on October 11, 2006. However, neither document indicates any evidence beyond mere cooperation, and thus the Speedy Trial clock under 18 U.S.C. § 3161(b) did not begin at the moment of his state arrest. *See generally U.S. v. Iaquinta*, 674 F.2d 260 (4th Cir. 1982).

In addition, any potential claims made by Hare under 18 U.S.C. § 3161(c), which provides a right to a trial within seventy days of an indictment or "appear[ance] before a judicial officer" must fail as a matter of law. 18 U.S.C. § 3161(c). To challenge the lack of a speedy trial under this provision, "a defendant must move to dismiss the charges before the start of trial or the entry of a guilty plea," something that Hare did not do. *U.S. v. Henry*, 538 F.3d 300, 304 (4th Cir. 2008) (noting that a defendant's "failure to make a timely motion to dismiss constitutes

5

a waiver of his rights under the Act"); 18 U.S.C. § 3162(a)(2). Thus, Hare's statutory speedy trial claims lack merit.

B. Speedy Trial Claims Under the Sixth Amendment

Hare also argues that the time period between his October 11, 2006 arrest by Prince George's County Police and his guilty plea on August 29, 2007 was so long that it violated his Sixth Amendment right to a speedy trial. The factors that go into a Sixth Amendment speedy trial inquiry include: "[1] [l]ength of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). However, the first factor functions as a "triggering mechanism," *Barker*, 407 U.S. at 530, and without a delay that is "presumptively prejudicial," it is unnecessary to analyze the other three factors. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). The Supreme Court has noted that under this first prong, "lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett*, 505 U.S. at 652 n.1.

The "length of delay" in this analysis is measured by the period from the indictment to the guilty plea, as the Sixth Amendment speedy trial clock does not begin until an indictment is issued. *United States v. Hall*, 551 F.3d 257, 270-72 (4th Cir. 2009) ("By definition, the constitutional right to a speedy trial is triggered by an indictment; it does not protect a defendant from a pre-indictment delay."). Hare was first indicted in this Court on April 18, 2007. ECF No. 3. The gap between April 18, 2007 and August 29, 2007 is far too short to trigger a full Sixth Amendment speedy trial analysis, as it is less than half a year. Thus, Hare's Sixth Amendment claim also lacks merit.

## II. Notice Under 21 U.S.C. § 851

Hare asserts that he was not provided sufficient notice of the government's intent to use a prior conviction to enhance Hare's sentence under 21 U.S.C. § 851. This statute provides that:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851 (a)(1). Hare's argument must be rejected because the government filed the requisite notice with this Court on August 24, 2007, five days before Hare's guilty plea hearing, and in the filing, the government certified that it mailed a copy of the notice on August 24 to Hare's attorney, Matthew Kaiser. ECF No. 13. In addition, Hare was made aware of the government's intent to file such a notice in his plea agreement, which he signed on August 24, 2007. Guilty Plea at 2 n.1[1], Ex. A. Finally, the government reiterated at the plea hearing that it had filed "a notice of intent to seek an enhanced penalty under 851, and that was served upon counsel and the defendant prior to the commencement of these proceedings." Guilty Plea Tr. at 11. The government also accurately points out in its response to Hare's motion that it was to his benefit that the government did not formally file a notice of intent to seek an enhanced penalty until after the plea agreement was signed, as it could have filed a notice indicating two prior convictions instead of one. Government Resp. at 12, ECF No. 70. Hare's claim under 21 U.S.C. § 851 is not meritorious.

---

[1] This footnote in the plea agreement states, "The increased mandatory minimum is based upon the government's filing of a criminal information advising the defendant the government will seek an enhanced mandatory minimum based upon a single prior drug felony conviction. As set forth, herein, the government will not seek a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)." Guilty Plea at 2 n.1.

### III. Involuntary Plea

Hare alleges that his guilty plea entered on August 29, 2007 was involuntary. This Court and the Fourth Circuit have already considered the voluntariness of Hare's guilty plea, with the Fourth Circuit affirming this Court's decision to deny Hare the opportunity to withdraw his plea. *See Hare*, 319 Fed. Appx. at 280-82, ECF No. 42. For a guilty plea to be valid it must be "intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A proper and extensive in-court colloquy indicating that a guilty plea is knowing and voluntary is "treated as conclusive with regard to the validity of the plea and may not be controverted later absent some compelling reason." *Savino v. Murray*, 82 F.3d 593, 603 (4th Cir. 1996). In addition, "when a defendant making a guilty plea is represented by counsel . . . his plea is strongly presumed to be valid in subsequent *habeas* proceedings." *Id*. This Court found at Hare's sentencing on June 27, 2008, that considering the extensive colloquy between the Court and Hare about the conditions of the plea agreement and the circumstances under which it was entered into, "there is no credible evidence that his plea was not knowing or voluntary." Sentencing Tr. at 37, ECF No. 39. Hare has offered no new evidence to change the Court's position, and consequently this ground for his motion is legally insufficient.

### IV. Ineffective Assistance of Counsel

According to Hare, both of his attorneys in this case, Matthew Kaiser and Timothy Sullivan, performed their jobs so deficiently that they violated Hare's Constitutional right to an attorney. Ineffective assistance of counsel claims are analyzed under the two-prong test described in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, the defendant must show that the attorney's performance or actions were objectively unreasonable. *Strickland*, 466 U.S. at 687. This prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment." *Id*. The Court must "evaluate the conduct [at issue] from counsel's perspective at the time," and it "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

Second, the defendant must also demonstrate that the defendant suffered prejudice from his attorney's performance. *Id*. at 687. Here, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.; *see also Marlar v. Warden, Tyger River Corr. Inst.*, 432 Fed. Appx. 182, 188 (4th Cir. 2011).

### A. Matthew Kaiser's Performance

Hare argues that Matthew Kaiser's performance violated Hare's Sixth Amendment right to counsel because he "forced" Hare into accepting his guilty plea and because he did not contest the government's alleged lack of a warrant to arrest Hare. Both claims fail to meet *Strickland*'s two part test.

#### 1. Hare's Guilty Plea

As mentioned earlier, this Court and the Fourth Circuit have already had occasion to examine the conditions of Hare's guilty plea, finding that Hare did not suffer from ineffective assistance of counsel. The Fourth Circuit held that "Hare fails to demonstrate counsel's performance fell below an objective standard of reasonableness. In particular, counsel's advice regarding Hare's potential sentence was correct." *Hare*, 319 Fed. Appx. at 280-82, ECF No. 42.

When a habeas petitioner challenges a guilty plea under § 2255 on the basis of ineffective assistance of counsel, and the petitioner's guilty plea colloquy establishes that his plea was voluntary and that he was satisfied with his counsel, "allegations in a §2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy

are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). "In the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id*. at 221-22.

During Hare's guilty plea colloquy, this Court asked Hare, "Are you fully satisfied with the services of Mr. Kaiser, your court-appointed attorney in this case?", to which Hare responded, "Yes, Your Honor." Guilty Plea Tr. at 6-7. This Court later asked Hare if anyone had "threatened [him] or tried to force or coerce [him] into pleading guilty in this case," to which he responded "Nothing but the time." Guilty Plea Tr. at 18. Mr. Kaiser explained that "the time" referred to the "[e]nhanced penalty which we're voiding by virtue of the plea agreement." Guilty Plea Tr. at 18. The Court then clarified its question for Hare, stating, "What I'm asking is, has anybody threatened you or said they will beat you up," to which Hare interjected "No, sir, Your Honor." Guilty Plea Tr. at 18. This Court continued, "or do bad things if you don't sign this document?" Guilty Plea Tr. at 18. Hare responded again, "No, sir." Guilty Plea Tr. at 18.

This exchange demonstrates that Hare's contention of coercion by Mr. Kaiser is frivolous. Hare offers no evidence of any "extraordinary circumstances" that would lead this Court to question its or the Fourth Circuit's conclusion that Hare's guilty plea was made with effective assistance of counsel.

2. The Alleged Lack of a Warrant

Hare also challenges Matthew Kaiser's failure to contest what Hare alleges as the government's lack of a warrant in arresting Hare on October 11, 2006. This allegation also fails because it was not objectively unreasonable for Mr. Kaiser to decline to pursue this line of inquiry. Even if there had been no warrant (which the affidavit by FBI agent Shim and the

10

Statement of Probable Cause filed in state court indicate there was), Hare's actions at the time of his arrest (fleeing the police and discarding a paper bag testing positive for crack cocaine) provided the police with enough facts to have a reasonable suspicion to stop him and probable cause to arrest him. *See* Pet'r's Exs. A, B, ECF Nos. 74-4, 74-5. As the government points out, it was not unreasonable for Mr. Kaiser to think that this line of argument would have been "a fruitless path of inquiry." Government's Resp. at 16, ECF No. 70. Therefore, Hare's allegations that Matthew Kaiser provided ineffective assistance of counsel must be rejected.

B.  <u>Timothy Sullivan's Performance</u>

According to Hare, Timothy Sullivan's performance as his attorney was so poor that it also denied Hare his Sixth Amendment right to an attorney. Hare argues that Sullivan acted unreasonably as Hare attempted to withdraw his guilty plea, that Sullivan performed deficiently at sentencing, and that Sullivan should have challenged Hare's prior convictions at sentencing.

Sullivan's performance during Hare's attempt to withdraw his guilty plea was objectively reasonable. He was put in a difficult position in that his client sought to withdraw his guilty plea, an unlikely prospect given the extensive guilty plea colloquy, and thus was likely to face the prospect of losing his credits for accepting responsibility and possibly face an obstruction of justice enhancement to his sentence. All of these things came true. Even so, Timothy Sullivan followed his client's wishes and presented Hare's case for withdrawing his plea. *See, e.g.*, Sentencing Tr. at 7 (questioning Hare about the pressure he said that he was under). In addition, Hare fails to show prejudice, as it is quite possible that if he had been permitted to withdraw his guilty plea, he would have been convicted and sentenced to life instead of thirty years. *See* Government Resp. at 17, ECF No. 70.

With respect to Sullivan's performance at sentencing, Hare argues that Sullivan should have challenged Hare's prior state court convictions, particularly given that he had been represented in

11

a number of state cases by Michael Worthy, someone that had previously prosecuted Hare as a state prosecutor. *See, e.g.*, ECF No. 74-2 at 47; Government Resp. at 17-21, ECF No. 70. However, these arguments fail because Sullivan did not act unreasonably in not contesting Hare's prior convictions at sentencing. The Fourth Circuit has held that at the sentencing stage, "absent an allegation that the defendant was denied counsel in the prior proceeding, a district court sentencing a defendant may not entertain a collateral attack on a prior conviction used to enhance the sentence unless the attack is recognized by law." *United States v. Darity*, 400 Fed. Appx. 786, 788 (4th Cir. 2010) (quoting *United States v. Longstreet*, 603 F.3d 273, 277 n.3 (5th Cir. 2010)). In its opinion, the court quoted from the Sentencing Guidelines:

> Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently-discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted. With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).

*Darity*, 400 Fed. Appx. at 787 (quoting *U.S. Sentencing Guidelines Manual* § 4A1.2 n.6 (2009)). Thus, Timothy Sullivan did not act unreasonably in failing to attack Hare's prior state convictions at sentencing.

In addition, Hare's arguments about the state convictions with Michael Worthy acting as his attorney do not make Sullivan's failure to challenge them unreasonable. As the government points out, Government Resp. at 20-21, ECF No. 70, and Michael Worthy states in Petitioner's Exhibit C, ECF No. 83-3, "Mr. Hare sought [Worthy] out to represent him and retained [his] firm several times." ECF No. 83-3. Hare fails to demonstrate that he did not in fact seek Worthy out as his attorney, thus making Hare's conflict of interest claims suspect enough for Sullivan to have acted reasonably in not challenging these state court convictions.

Hare raises a number of other issues related to Sullivan's performance as his attorney, but none is persuasive enough to address in depth here. As the government points out in its response, Hare makes a number of flawed claims about Sullivan's failure to contest Hare's prior convictions as "qualifying career offender predicates," for example citing a case that had interpreted the Controlled Substances Act before its enhanced penalties applied to prior state convictions in addition to federal convictions. Government Resp. at 18-20, ECF No. 70; ECF No. 53 at 9.

Hare presents a wide range of statutory and Constitutional arguments as to why his sentence should be vacated, set aside, or corrected under 28 U.S.C. § 2255, but for the reasons discussed above, they all must be rejected.

## CERTIFICATE OF APPEALABILITY

Hare may not appeal this Court's order denying him relief under 28 U.S.C. § 2255 unless it issues a certificate of appealability. *United States v. Hardy*, 227 Fed. Appx. 272, 273 (4th Cir. 2007). A certificate of appealability will only issue if Hare has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); *Hardy*, 227 Fed Appx. at 273. A petitioner "satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable." *United States v. Riley*, 322 Fed. Appx. 296, 297 (4th Cir. 2009).

Here, the Court has assessed Hare's speedy trial claims, his claim regarding notice under 21 U.S.C. § 851, his allegation that he made an involuntary guilty plea, and his ineffective assistance of counsel claims on the merits and found them deficient. Hare raised numerous arguments and allegations of fact, yet failed to satisfy the requirements for each of these claims.

No reasonable jurist could find merit in any of Hare's claims, and therefore no certificate of appealability shall issue.

## CONCLUSION

For the foregoing reasons, Hare's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 will be denied and no certificate of appealability shall issue. A separate Order follows.

<u>Date</u>:  September 26, 2013                          /s/
                                                                                                      ROGER W. TITUS
                                                                        UNITED STATES DISTRICT JUDGE